**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE  DIVISION**

**DANIEL JON PETERKA,**

       **Petitioner,**

**v.**                                                    **Case No.: 3:05cv00022/SPM**

**JAMES R. McDONOUGH,[1] Secretary,**
**Florida Department of Corrections,**

**and**

**CHARLES J. CRIST, JR., Attorney General,**

       **Respondents.**

_____/

**ORDER DENYING PETITION**

      This cause is before the Court on a petition for writ of habeas corpus filed by Daniel Jon Peterka, a Florida death row inmate, pursuant to Title 28, United States Code, Section 2254 (doc. 1).   Petitioner has asserted six claims for relief. Respondents have filed an answer (doc. 19) and  Petitioner has filed a reply (doc. 26) and notices of supplemental authority (docs. 35 & 45).  After careful consideration of the issues raised in the pleadings and for the reasons stated below, the petition is denied.

**I.  FACTS & PROCEDURAL HISTORY**

      ***Facts***.  The relevant facts are set out as follows in the Florida Supreme Court's opinion addressing the denial of Petitioner's postconviction relief:

      Briefly stated, Peterka fled Nebraska in February 1989 after being

---

[1] James R. McDonough succeeded James V. Crosby, Jr. as Secretary for the Department of Corrections and is automatically substituted as Respondent.  See Fed. R. Civ. P. 25(d)(1).

sentenced to a one-year prison term for theft. He reappeared in Niceville, Florida, and sometime in April 1989, he moved into a rental duplex with Russell [John Russell, the murder victim in this case] because Russell was having difficulty paying the rent. On June 27, 1989, Peterka obtained a duplicate driver's license with his picture and Russell's name. Peterka then cashed a $300 money order that was payable to Russell and had been mailed to Russell by a relative. Russell suspected that Peterka had stolen the money order but told several people that he was not going to confront Peterka, who kept a gun at the house.

Russell was reported missing by his friend and co-worker, Gary Johnson, on July 13, 1989. Sheriff's Deputy Daniel Harkins questioned Peterka about Russell's whereabouts, and subsequently ran Peterka's name and birth date in the sheriff's office's computer, which indicated that Peterka was a fugitive from Nebraska with an outstanding warrant. Peterka was arrested early the next morning.

On July 18, 1989, Peterka gave a statement to police in which he admitted shooting Russell. This Court summarized Peterka's statement as follows:

Peterka forged Russell's signature and cashed the money order. He paid Russell one hundred dollars to use Russell's identification. Russell instigated a shoving match over the money order that escalated into a fight in the living room of the duplex. Both men reached for Peterka's gun, but Peterka got it first. As Russell got up from the couch, the weapon accidentally fired and the bullet entered the top of Russell's head. Russell fell down on the couch. Peterka wrapped Russell's body in a rug, drove to a remote part of Eglin Air Force Base, and buried the body in a shallow grave.

[Peterka v. State, 640 So.2d 59] at 64. Peterka subsequently led police to Russell's body and gave a videotaped statement similar to the statement he had given earlier. This videotaped statement was introduced into evidence at trial.

The medical examiner testified that Russell died from a close-range gunshot wound to the head and that the wound was consistent with Russell having been shot from behind while in a reclining position. A firearms expert testified that in his opinion Peterka's gun would not accidently fire and that the gun had two safety mechanisms that would prevent it from firing unless the trigger was pulled.

Peterka v. State, 890 So. 2d 219, 225-26 (Fla. 2004)(per curiam), cert. denied , 545 U.S. 1118, 125 S. Ct. 2911, 162 L. Ed. 2d 301 (2005).

*State Proceedings.*   Petitioner was tried in the Circuit Court of Okaloosa County, Florida and was convicted of first degree murder on March 2, 1990.  After a penalty phase proceeding, the advisory jury returned a verdict voting eight to four in favor of death.  Peterka v. State, 640 So. 2d 59 (Fla. 1994)(per curiam), cert. denied, 513 U.S. 1129, 115 S. Ct. 940, 130 L. Ed. 2d 884 (1995).  The trial court followed the jury's recommendation and sentenced Petitioner to death for the murder.  The court found five aggravating circumstances applied to the homicide:  (1) it was committed while under a sentence of imprisonment; (2) it was committed for the purpose of avoiding or preventing lawful arrest; (3) it was committed for pecuniary gain; (4) it was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws; and (5) it was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.  Id. at 65.  The trial court found in mitigation that Petitioner had no significant history of prior criminal activity, but found no nonstatutory mitigating circumstances.  Id.

The conviction and death sentence were affirmed on direct appeal.[2]  See id.  Although the Florida Supreme Court did find that the trial court erred by (1) allowing the State to present evidence of Petitioner's juvenile record during the penalty phase;

---

[2]Petitioner asserted twelve trial errors on direct appeal, claiming that the trial court erred by:   (1) excusing for cause prospective juror Piccorossi because of his personal opposition to the death penalty; (2) denying Petitioner's motion to suppress his statements to the police; (3) denying Petitioner's motion for judgment of acquittal based upon insufficient evidence of premeditation; (4) admitting hearsay evidence that Petitioner had fled Nebraska and was considered "armed and dangerous"; (5) admitting testimony that the victim suspected Petitioner of stealing the money order and that the victim intended to let the police handle the matter; (6) admitting into evidence a photograph of the victim's skull; (7) entering a sentencing order lacking clarity; (8) finding the aggravating factor that the murder was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws; (9) finding that the murder was committed for pecuniary gain; (10) referring to other "mitigating circumstances" in the sentencing order without stating what they were or why they did not amount to mitigation as required by Campbell v. State, 571 So. 2d 415 (Fla. 1990); (11) allowing the state, during cross-examination of Petitioner's mother at the penalty phase, to allege that Petitioner had an extensive juvenile record; and (12) partially denying Petitioner's motion to suppress his statements because he repeatedly asked for assistance of counsel, which law enforcement ignored.  See Peterka v. State, 640 So. 2d 59, 65 (Fla. 1994).

(2) impermissibly "doubling" the avoid arrest aggravating circumstance and the hinder law enforcement circumstance, and (3) finding the pecuniary gain circumstance, the court found that these errors were harmless.  <u>Id</u>. at 70-71.

Petitioner then filed a motion for postconviction relief in state court pursuant to Florida Rules of Criminal Procedure 3.850 and 3.851.[3]  His motion was denied by the trial court and he appealed this denial, raising six issues.[4]  On appeal, the denial of postconviction relief was affirmed.   <u>See</u> <u>Peterka</u>, *supra*, 890 So. 2d 219.   Petitioner also filed a state writ of habeas corpus which was denied. [5]  <u>Id</u>.

<u>*Federal Habeas Proceedings*</u>.  Petitioner filed the instant petition (doc. 1) under 28 U.S.C. § 2254.  The petition is ripe for adjudication.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

---

[3]Petitioner asserted six claims in his Rule 3.851 motion.  <u>See</u> <u>Peterka v. State</u>, 890 So.2d 219, 227 n. 4 (Fla. 2004).

[4]Petitioner asserted the following claims in the appeal of his denial of his Rule 3.851 motion for postconviction relief:

(1) whether the trial court erred in denying Peterka's claim that trial counsel were ineffective during the guilt phase; (2) whether the trial court erred in denying Peterka's claim that trial counsel were ineffective in failing to advise Peterka of his right to testify; (3) whether the trial court erred in denying Peterka's claim that trial counsel were ineffective during the penalty phase; (4) whether the trial court erred in denying Peterka's claim that trial counsel were ineffective during voir dire; (5) whether Peterka was denied due process during the postconviction evidentiary hearing; and (6) whether Peterka was denied due process by postconviction counsel's failure to investigate and present evidence supporting his claims for relief.

<u>Id</u>. at 228 n. 6.

[5]Petitioner asserted eight claims in his state court habeas corpus petition.  <u>See id</u>. at n. 7.

Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[6] The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the

_____

[6]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 165-66, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002)  (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant

Supreme Court authority."   <u>Fugate</u>, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are <u>not</u> substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." <u>Id</u>*.* (citing and quoting <u>Williams</u>, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  <u>Bell v. Cone</u>, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting <u>Williams</u>, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error."  <u>Williams</u>, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of

Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Finally, in the event that constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in Brecht v. Abrahamson, 507 U. S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).  The test is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'  Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but are not entitled to habeas relief based on trial error unless they can

establish 'actual prejudice.'" <u>Id.</u> at 637 (quoting <u>Kotteakos v. United States</u>, 328 U. S.
750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)).[7]

Within this framework, the Court will review Petitioner's claims.

### III.    PETITIONER'S CLAIMS

**A.    Ground One:    Ineffective Assistance of Guilt Phase Counsel**

**<u>Petitioner's conviction was obtained as a result of his trial counsel's unreasonable
and unapproved abandonment of his version of how the shooting occurred in violation
of his Sixth and Fourteenth Amendment rights.</u>**

In Petitioner's first claim of ineffective assistance of counsel, he contends  that
his trial counsel, Mr. Earl Loveless, conceded his guilt by presenting a defense which
combined both a self-defense theory and an accidental shooting theory.  In support
of this contention, Petitioner points out the following statement made by Mr. Loveless
in the closing argument of the guilt phase of the trial which he claims is the functional
equivalent of a guilty plea:

> But if you recall Dan's statement, they struggled around the room over
> towards the television, they bumped into and probably fell across the
> coffee table.  You will note in this picture the coffee table is up against
> one of the couches.  It's not the couch on which the blood stains are, but
> the opposite-side couch.  During the struggle John Russell was basically
> behind Dan.  Dan knocked him off, John fell backwards onto the couch.
> Dan turned around with the gun in his hand <u>and the gun fired or went off
> or whatever</u>.

Doc. 1, Mem. at 23 (citing the trial record at Resp.'s Exh. 1-IX at 1767-68).  Petitioner
also argues that Mr. Loveless conceded his guilt by letting the jury hear uncontested
expert testimony that the gun "was in good working order" and that there was "<u>[n]o
condition that would lead to [an] accidental discharge</u>."  <u>Id.</u> at 24 (citing the trial record
at Resp.'s Exh. 1-IX at 1554-55).

Petitioner asserts that John  Russell's death was neither an accident nor self-

---

[7]This harmless error standard is also applicable to cases involving habeas challenges to death sentences.
<u>See</u> <u>Calderon v. Coleman</u>, 525 U.S. 141, 119 S. Ct. 500, 142 L. Ed. 2d 521 (1998); <u>Duest v. Singletary</u>, 997 F.2d
1336 (11th Cir. 1993); <u>Hicks v. Head</u>, 333 F.3d 1280 (11th Cir. 2003).

defense ("he shot Russell unintentionally by jerking the gun's trigger for being startled to see Russell lunging toward him with his head down." Doc. 1, Mem. at 23 (citation to the record omitted)). Petitioner claims that he was prejudiced by this defense strategy because it allowed the prosecution to admit otherwise inadmissible evidence concerning the victim's reputation for peacefulness and non-violence and the victim's fear of Petitioner's gun which implied that the victim would not have confronted Petitioner about the stolen money order, and thus shows that he shot the victim with premeditation. See Doc. 1, Mem. at 26.

1. *State Proceedings*

Petitioner raised this issue in his state court motion for postconviction relief. The Florida Supreme Court found that Mr. Loveless presented a "viable, coherent defense strategy of either self-defense or unintentional killing" given Petitioner's statement to police. Peterka, 890 So. 2d at 229. The court stated:

> Here, the State's theory was that Peterka came up behind Russell as Russell was lying on the couch and shot him in the head at close range. Although Peterka did not testify during the guilt phase, his videotaped statement to police was presented to the jury. According to Peterka, Russell instigated the fight, both he and Russell reached for the gun, and as Russell was coming towards him, Peterka accidently fired the gun.
>
> Assistant Public Defender Loveless, who was responsible for presenting the guilt phase defense at trial, testified at the evidentiary hearing that based on Peterka's videotaped statement, the theory of defense was either an accidental shooting or self-defense. Loveless stated that in light of Peterka's statement and the fact that Peterka was the one in possession of the gun, Loveless did not think the jury would acquit Peterka on a pure accident or self-defense theory. Rather, Loveless said that realistically he was hoping that these theories, perhaps in tandem, would lead to a verdict of guilty of manslaughter. Loveless's postconviction testimony is supported by the trial record.

Id. at 230. With regard to Petitioner's specific claim that his trial counsel conceded his guilt, the court found that the claim was refuted by the record. The court explained:

> A review of Loveless's opening statement confirms that he did not admit

that Peterka was guilty of first-degree premeditated murder.  Rather, Loveless conceded only that if the prosecutor proved the facts he promised to prove, the jury could find Peterka guilty.  Further, Loveless explained why he did not believe the prosecutor could establish the facts necessary to prove first-degree premeditated murder.  In fact, in his closing argument Loveless asked the jury to hold the prosecutor to his promise about what the evidence would show and argued that the State did not meet its burden of proof.  Thus, the trial court properly denied this claim.

Id.[8]

## 2.    *Clearly Established Supreme Court Law*

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, a habeas petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  Id. at 687.  It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof.  Id.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Id. at 697.

In determining whether counsel's performance was reasonable, the Court instructed:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful,

---

[8]Mr. Loveless stated the following in his opening statement:

Your job is to determine, ultimately at the end of this case, what Mr. Elmore has proven to you beyond a reasonable doubt.  Quite frankly, if what he proves to you, those facts right at the end where he was talking about what the facts are going to show, what the evidence is going to show, if those facts are proven, you are going to come back with a verdict of First Degree Premeditated Murder.  There is no question about it.

Resp.'s Exh. 1-VI at 1121-22.

Case No.  3:05cv00022/SPM

to conclude that a particular act or omission of counsel was unreasonable. *Cf.* Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574–1575, 71 L. Ed.2 d 783 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  See Michel v. Louisiana, *supra,* 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Strickland, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some

of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

Id. at 695–96.

3.     *Federal Review of State Court Decision*

Initially, this Court defers to the state court's factual findings as Petitioner has not shown by clear and convincing evidence that those findings are unreasonable.[9] See 28 U.S.C. § 2254(d)(2)-(e)(1); Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."). Next, this Court must decide whether the state court's denial of Petitioner's claim is contrary to or an

_____

[9]Petitioner contends in his reply to Respondents' answer (doc. 26) that the state court based its denial of this claim on the "clear factual error" that his trial counsel argued a coherent theory of self-defense and that "[t]he only evidentiary support for that factual determination is Mr. Peterka's trial counsel's evidentiary hearing claim the theory of the defense was self-defense." Id. at 10. Thus, Petitioner claims that this Court owes no deference to the state court's factual determination. A thorough review of the trial record demonstrates that Petitioner's trial counsel, through cross-examination of witnesses and in argument, tried to prove to the jury that the shooting occurred during the course of a struggle and that it was not a premeditated act, but that the gun just went off. While he may not have used the words self-defense, it is clear that he was attempting to fit the facts of the case into a legal context in which the jury could find Petitioner not guilty of first degree murder. Additionally, the state court found that Mr. Loveless presented a "viable, coherent defense strategy of either self-defense or unintentional killing." Peterka, 890 So.2d at 229 (emphasis added). A review of the jury instructions given demonstrates that instructions were given to encompass any possible interpretation of the facts. See Resp.'s Exh. 1-X at 1816-34.

unreasonable application of clearly established Supreme Court law.  The Florida Supreme Court cited Strickland v. Washington as the legal standard for analyzing claims of ineffective assistance of counsel and applied those standards to the facts of Petitioner's claims.  Therefore, the court applied the correct legal rule based on Supreme Court precedent.  The remaining issue is thus whether the state court's denial of Petitioner's claim resulted in an unreasonable application of Strickland.

Regarding the first prong of the Strickland analysis, Petitioner must show that no competent counsel would have taken the action that his counsel took.  Based on the state court record, this Court cannot conclude that counsel's performance was not "reasonable considering all the circumstances" or that counsel committed "serious derelictions" of his duty.  Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991).

In this case Petitioner claimed that Russell instigated the fight, both he and Russell reached for the gun, and as Russell was coming towards him, Petitioner unintentionally fired the gun.   Petitioner described the incident as follows when questioned by investigators with the Okaloosa County Sheriff's Department:

A.  [Petitioner]  He came in through the front door, appeared to be a little bit upset.  I didn't say much.  Said, "howdy", pretty much the usual greetings, I guess.  He just was really acting kind of strange and that – just started wanting to know about some money and that.  I asked him what he was talking about and he got to screwing around.  I got up and walked into the kitchen and grabbed a beer.  He followed me into the kitchen, came up behind me, and grabbed a beer out of the refrigerator, and he said, "where is it?  Where's the money?", and we started getting into it a little bit more.  I knew what he was talking about.

Q.  You did know what he was talking about?

A.  Yes, sir.

Q.  Okay.

A.  I said – it just escalated into an argument, started talking back to him.  I said – started arguing back with him about the money, how all he could do was go out and party, and this and that, and I couldn't pay the bills, how I paid half the bills and the next thing I know people are coming

to the door because they didn't get their money.  He would go out and spend it, and I was yelling at him, and he was yelling at me, and I turned to walk back into the living room.  About that time I got to the doorway, he pushed me and I turned around and it just became a struggle.  It probably didn't last too long.  We struggled around through the living room.  We got over by the T.V. set.  We were still pretty much just wrestling.  It wasn't really a fight, it just – it just became more and more of a struggle. He was behind me, more or less hugging me from behind, and I pretty much fell across the coffee table.  The gun had been laying on the coffee table.  I had been working on it.

Q.   Was it loaded?

A.    Yes, sir, it was.

Q.   Was it out – I mean, it wasn't in the case or anything, is that correct?

A.    No sir.  I had just put it back together.  Seemed like we both started grabbing for it, just really – we just – it was in a flash.  I don't know how long we really struggled for the gun or anything like that, but I pushed him off behind me, and I had the gun, and I turned around and he was pushing up off the couch, pretty much from a seated position, and he – and he was coming at me kind of head down and I fired the weapon.  I couldn't even believe it, it's almost like I didn't even really know it – just fired the weapon, and he sat back down on the couch and just fell over backwards, just laid down on the couch.  I stood there probably a couple of seconds. I – I got up to him and he was really bleeding.  He was bleeding really bad, and I ran and got some towels, and I pulled him towards me and there was blood everywhere.  He was alive, he was breathing.  That's all I could really think about was stopping the blood at the time, and I tried to put towels by his head.  I didn't know what to do and he stopped breathing and then I really panicked.  I didn't know – I really didn't know what to do. I knew he was dead.  I did everything I could really think of – I tried moving his head, everything.   All I could think of was moving him somewhere, hiding him.

Resp.'s Exh. 2-II at 2442-44 (transcript of video tape).

Because this videotaped statement was admitted into evidence at the trial, Petitioner's defense counsel had to fashion a defense taking it into consideration.  At the evidentiary hearing on Petitioner's postconviction motion, Mr. Loveless described the theory of the defense as follows:

The only possible defense in this case was one of self-defense in the situation because of the statements that had been given.  As in most cases the defense is dictated by what has happened at the arrest and the statements that are made, and that's what happened in this case . . . . and Dan told the same story to us that he told to the investigators, and it was clear that that was our position in the case.  It was the only position we could take.

Resp.'s Exh. 21-VI at 365.   Mr. Loveless elaborated later in his testimony when questioned by Robert Elmore, attorney for the State, as follows:

Q.     Okay.  And the theory of the defense was what?

A.     What Dan had described, that they had had a struggle, that during the struggle the person was–they were separated, the victim went to the couch, came back up off the couch and that Dan had the gun pointed in that direction and it either fired or went off, so it would have been–it was during the struggle and therefore it was part of self-defense.

Q.     Okay.  And how does that become self-defense?

A.     Well, it becomes an accidental shooting during the course of the struggle for the gun, basically.

Q.     Okay.  And the theory being accidental–I'm just trying to get this articulated and I don't want to substitute my words for yours, but the theory being is does accidental get you something that self-defense doesn't get you, or does self-defense get you something that accidental doesn't get you?

A.     No.  If you could actually show to a jury that it was truly accidental, that he was, according to the instruction, doing something that he was lawfully entitled to be doing and that the death occurred during that, then you might get a not guilty based on the fact that the jury could find that it was just truly an accident, but I didn't believe that that's what the jury, based upon the totality of the evidence that it was Dan's gun and that he had the gun and that–just the various circumstances–that that was going to be a defense that the jury would believe.

Id. at 381-82.  When asked about the portion of his opening statement wherein he stated that if the State proves all of the things it says it can, then the defendant will be

guilty of first degree murder, Mr. Loveless testified that, "I was trying to emphasize what was to come next, that that's a big if because I think it would show that you are not going to be able to do that." Id. at 342-43.  Finally, when asked if he conceded manslaughter in his closing statement, Mr. Loveless stated that he did with the consent of Petitioner.  He stated:

> No question about it that my advice to him was that there was just simply no way that we were going to be able to argue to the jury that this was anything but, that it was an accident or anything like that.  It was in the form of an accident but it occurred in such a manner that it was going to be manslaughter at best.

Id. at 366.

A review of both the opening and closing statements in their entirety demonstrates that Mr. Loveless was emphasizing to the jury that he did not believe that the State could or had met its burden of proof as to first degree murder in this case, particularly as to the element of premeditation.  He did, however, have to confront the facts as they existed and, in particular, deal with the statements Petitioner made to the investigators which were entered into evidence as well as to the physical evidence admitted in the case.  His attempt to craft a self-defense/ accidental death theory of defense is thus not an unreasonable strategy in light of all of the facts and circumstances surrounding the case.

A review of the record also demonstrates that Mr. Loveless's comments did not concede Petitioner's guilt to first degree murder.  The United States Supreme Court addressed the issue of conceding guilt in Florida v. Nixon, 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed.2d 565 (2004).  In Nixon, defense counsel in  a capital case made a strategic decision to concede the defendant's commission of murder at the guilt phase of the trial and to concentrate the defense on establishing, at the penalty phase, cause for sparing the defendant's life.  Mr. Corin stated in his opening statement that, "In this case, there won't be any question, none whatsoever, that my client, Joe Elton Nixon, caused Jeannie Bickner's death . . . [T]hat fact will be proved to your satisfaction beyond any doubt." Id., 543 U.S. at 182-83.  Given the overwhelming evidence of guilt

in the case, Nixon's defense attorney felt that if he denied that Nixon had kidnaped and murdered the victim, his ability to persuade the jury to spare Nixon's life would be compromised.  The state supreme court presumed deficient performance and prejudice because it found that the defendant had not expressly consented to this strategy, although this strategy had been discussed with the defendant.

> The Court distinguished between a guilty plea and a concession of guilt:
>
> A guilty plea is an event of signal significance in a criminal proceeding. By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one's accusers.  While a guilty plea may be tactically advantageous for the defendant, the plea is not simply a strategic choice; it is 'itself a conviction' and the high stakes for the defendant require 'the utmost solicitude'. . . . Accordingly, counsel lacks authority to consent to a guilty plea on a client's behalf . . . . Despite Corin's concession, Nixon retained the rights accorded a defendant in a criminal trial.  The State was obliged to present during the guilt phase competent, admissible evidence establishing the essential elements of the crimes with which Nixon was charged. . . .  Further, the defense reserved the right to cross-examine witnesses for the prosecution and could endeavor, as Corin did, to exclude prejudicial evidence.  In addition, in the event of errors in the trial or jury instructions, a concession of guilt would not hinder the defendant's right to appeal.

Id. at 187-88 (internal citations omitted).  The Court held that defense counsel must consider both the guilt phase and the penalty phase in determining trial strategy, and even when the defendant is unresponsive when informed of a possible strategy, if the strategy satisfies the Strickland standard, no tenable claim of ineffective assistance of counsel would remain.  Id. at 192.  See also Atwater v. Crosby, 451 F.3d 799, 808-809 (11th Cir. 2006).

In the instant case, defense counsel did not concede Petitioner's guilt to first degree murder, nor did his comments cited by Petitioner constitute the entry of a guilty plea.  The State was required to present competent, admissible evidence establishing the essential elements of first degree murder; defense counsel vigorously cross-examined the State's witnesses; defense counsel made strategic motions before,

during and after the trial; defense counsel made meaningful objections to the admissibility of testimony; and defense counsel presented a cogent defense theory in the opening and closing statements of the guilt phase of the trial.  In light of the vigorous defense mounted by Petitioner's counsel, it is completely unreasonable that the statements complained of by Petitioner or the strategy in general were in effect a concession of guilt of first degree murder.

Defense counsel subjected Petitioner's case to a meaningful adversarial testing.  In fact, Mr. Loveless reviewed the evidence in his closing argument and contradicted the State's theory of its case, and he concluded his closing argument with the following statement:

> I'm not telling you that Dan Peterka is not guilty, because he killed John Russell.  You can look at the evidence and you can find what you think that evidence shows beyond every reasonable doubt.  You may find he is guilty of manslaughter, you may find it was accidental or a combination of things.  One thing it clearly was not, it was not first degree murder.
>
> You'll sit here all day and all night and you'll find no evidence of first degree murder.  You will find only Mr. Elmore's suppositions and statements as I told you from the beginning and now you see why.  Thank you.

Resp.'s Exh. 1-x at 1814-15.

Petitioner has failed to demonstrate that his counsel conceded his guilt, much less shown that his counsel's strategy was unreasonable.  An attorney's duty to consult with his client regarding important decisions "does not require counsel to obtain the defendant's consent to 'every tactical decision.'" Nixon, 543 U.S. at 560. Defense counsel here were obliged to determine an effective defense strategy in light of the physical evidence and the statements Petitioner made concerning Russell's death.  There is no evidence in the record that they acted as no competent counsel would have in the same circumstances.

At the time of Petitioner's trial, Mr. Loveless had tried six capital cases to conclusion and penalty phase counsel, Mark Harllee, had worked on two prior capital

cases.  Resp.'s Exh. 17 at 2.  They were experienced counsel, and Petitioner has not met the Strickland standard that their performance fell below an objective standard of reasonableness.  The reluctance to second guess strategic decisions is greater when the decisions are made by experienced counsel.  See Spaziano v. Singletary, 36 F.3d 1028, 1040 (11th Cir. 1994)("[T]he more experienced an attorney is, the more likely it is that his decision to rely on his own experience and judgment in rejecting a defense without substantial investigation was reasonable under the circumstances." (quoting Gates v. Zant, 863 F.2d 1492, 1498 (11th Cir. 1989)).

Because Petitioner has failed to establish deficient performance, this Court will not address the prejudice prong of Strickland.  The state court's factual findings are supported by the record and must be given deference by this Court.  Petitioner has the burden under 28 U.S.C. § 2254(e)(1) to rebut the state court's factual determinations as to this issue with clear and convincing evidence.  Petitioner has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent.  Given these considerations, this Court cannot conclude that the Florida Supreme Court unreasonably applied, or reached a decision contrary to, clearly established federal law.  Therefore, Petitioner is not entitled to habeas relief on this ground.

**B.      Ground Two:       Ineffective Assistance of Penalty Phase Counsel**

**Petitioner's death sentence is unreliable due to the cumulative harm of trial counsel's unreasonable acts and omissions with respect to presentation of mitigation evidence and of his sentencers' finding and weighing inapplicable aggravating circumstances in violation of the Sixth, Eighth and Fourteenth Amendments.**

Petitioner alleges that his penalty phase counsel, Mark Harllee, was ineffective for failing to present the following mitigating evidence during the penalty phase of his trial:  his military record, including several commendations; the fact that he had been a model inmate while awaiting trial for this crime; his loving relationships with his family; his characteristics of peacefulness; and his prior good deeds and charitable

acts.

1.   _**State Proceedings**_

Petitioner raised this issue in his state court motion for postconviction relief. The Florida Supreme Court affirmed the trial court's denial of this claim. With respect to the failure to present evidence of Petitioner's military service, the court held that while Petitioner's penalty phase counsel and investigator were aware of his prior military service, there was competent and substantial evidence to support the trial court's finding that counsel made a reasoned tactical decision not to present this evidence in mitigation. The court stated,

> Harlee [sic] testified that in this case there was a "negative" side to the military service mitigation because Peterka's illegal conduct led to his discharge from the National Guard. Harlee believed that because the trial was being held in "a very heavy military area," Peterka's conduct could be viewed as "besmirching the name of the military." Fearing that the prosecutor would "come back and destroy" it if Peterka's military service was highlighted, Harlee decided not to pursue this mitigation. Thus, Harlee's tactical decision not to focus on Peterka's military service as a mitigating circumstance was not deficient performance.

Peterka, 890 So. 2d at 237. In addition, the court found that Petitioner had failed to establish prejudice because the military service was not strong mitigation when weighed against the aggravating circumstances (i.e., cold, calculated and premeditated; avoid arrest; and under sentence of imprisonment). Id.

With respect to the failure to present model prisoner evidence, including the fact that Petitioner did not participate in an escape made by his cellmates which occurred after his penalty phase but prior to sentencing, the court held that no prejudice had been established. It found that in light of the three aggravating circumstances, this mitigation evidence, in addition to the fact that Petitioner had no significant criminal history, "does not undermine our confidence in the outcome in this case." Id.

Finally, with respect to evidence of Petitioner's good relationship with his family, his helpful nature, and nonviolent past, the court found that the jury was presented with all of this evidence in an effective manner. Therefore, no deficient performance

or prejudice had been established. <u>Id</u>.  In addition, the court found that much of the evidence presented at the evidentiary hearing was cumulative; that Petitioner's father was unable to testify at the penalty phase due to heart problems; and Petitioner's mother testified at the evidentiary hearing that she would not have wanted Petitioner's siblings exposed to his trial due to their ages at the time.  <u>Id</u>. at 237-38.

    2.   *<u>Clearly Established Supreme Court Law</u>*

    The <u>Strickland</u> standard for challenges to ineffective assistance of counsel are set forth *supra*.  In <u>Wiggins v. Smith</u>,  539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), the Court reaffirmed the principles announced in  <u>Strickland</u> as follows:

> In light of these standards, our principal concern in deciding whether [counsel] exercised "reasonable professional judgmen[t]"[<u>Strickland</u> at 691, 104 S. Ct. 2052], is not whether counsel should have presented a mitigation case.    Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background *was itself reasonable*. . . . In assessing counsel's investigation, we must conduct an objective review of their performance, measured for "reasonableness under prevailing professional norms," [<u>Strickland</u> at 688], which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time," [<u>id</u>. at 689]("[E]very effort [must] be made to eliminate the distorting effects of hindsight").

<u>Wiggins</u>, 539 U.S. at 522-23.

    3.   *<u>Federal Review of State Court Decision</u>*

    Initially, this Court defers to the state court's factual findings as Petitioner has not shown by clear and convincing evidence that those findings are unreasonable.  <u>See</u> 28 U.S.C. § 2254(d)(2)-(e)(1); <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2).  Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.").  Next, this Court must decide whether the state court's denial of Petitioner's claim is contrary to or an

unreasonable application of clearly established Supreme Court law.  The Florida Supreme Court cited <u>Strickland</u>, as well as <u>Wiggins</u>, as the legal standard for analyzing claims of ineffective assistance of counsel and applied those standards to the facts of Petitioner's claims.  Therefore, the court applied the correct legal rule based on Supreme Court precedent.  The remaining issue is thus whether the state court's denial of Petitioner's claim resulted in an unreasonable application of <u>Strickland</u>.

With regard to what evidence may be presented in mitigation, the Eleventh Circuit Court of Appeals has held that "[a]fter a sufficient investigation, however, 'counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.'" <u>Lightbourne v. Dugger</u>, 829 F.2d 1012, 1025 (11th Cir. 1987)(internal citations omitted).

> The lesson to be drawn from our decisions is not that counsel's performance is always, or even usually, deficient if counsel fails to present available mitigating circumstance evidence.  Nor is the lesson that the presentation of some mitigating circumstance evidence will always insulate counsel's performance from being condemned as ineffective.   Instead, our decisions teach that whether counsel's performance is constitutionally deficient depends upon the totality of the circumstances viewed through a lens shaped by the rules and presumptions set down in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), and its progeny.

<u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995).  <u>See</u> <u>also</u>, <u>Stevens v. Zant</u>, 968 F. 2d 1076, 1082 (11th Cir. 1992)("[T]rial counsel's failure to present mitigating evidence is not per se ineffective assistance of counsel.").  "No absolute duty exists to introduce mitigating or character evidence." <u>Chandler v. United States</u>, 218 F.3d 1305, 1319 (11th Cir. 2000); <u>see</u> <u>also</u>, <u>Crawford v. Head</u>, 311 F.3d 1288, 1297 (11th Cir. 2002); <u>Conklin v. Schofield</u>, 366 F.3d 1191, 1204 (11th Cir. 2004).  "Considering the realities of the courtroom, more is not always better."  <u>Chandler</u>, 218 F.3d at 1319. "[E]ven when trial counsel's investigation is less complete than collateral counsel's, trial counsel has not performed deficiently when a reasonable lawyer could have decided, in the circumstances, not to investigate."  <u>Housel v. Head</u>, 238 F.3d 1289, 1295 (11th Cir.

2001).

First, it must be determined whether the investigation supporting Mr. Harllee's decision not to introduce certain mitigating evidence in Petitioner's background was reasonable.   The postconviction court detailed the investigation into possible mitigation evidence as follows:

> Mr. Harllee testified that with the assistance of Bill Graham, Investigator for the Okaloosa County of the Public Defender, that he prepared for the penalty phase for approximately three to four months prior to trial.  Mr. Harllee met with the Defendant, spoke to his family over the phone, as well as, met with them in person in preparation of the penalty phase. Further, a detailed 30-40 page questionnaire was prepared with the Defendant's assistance, which provided personal information of the Defendant.  Mr. Harllee testified that he was almost positive that the public defender's questionnaire administered to the Defendant had a space for military background or military history.  This questionnaire along with the public defender's intake form and conversations with the Defendant and his family provided the information and basis for the presentation of mitigation evidence.

Resp.'s Exh. 17 at 17. (Order on Defendant's Rule 3.851 Motion for Postconviction Relief).   The court also summarized the mitigation evidence which was presented to the jury as follows:

> During the penalty phase, the defense presented evidence through the testimony of his mother that the Defendant was a loved and loving member of his family, that he was kind to others and animals, and that he was a good person.   Further, a family photo album was introduced to show the Defendant's loving relationship with his family and his younger years.   Any alleged mitigation evidence tendered during the evidentiary hearing of the Defendant's father or siblings is irrelevant since the Defendant's mother testified that his father appeared to be having a heart attack during the penalty phase and was unable to testify and that the siblings were too young to take out of school to come testify during the penalty phase.  Additionally, during the mother's penalty phase testimony, she told the jury about the Defendant's relationship with his father and his siblings.   Moreover, two other witnesses, Cindy Rush and Connie LeCompte, also testified during the penalty phase of the loving relationship he had with his family, his gentle and caring nature, and his good deeds and charitable acts.

**Id**. at 20-21.  Mr. Harllee described his penalty phase strategy as "where I was going with the jury was to appeal to their sympathetic side, that Daniel was, in fact, a person who had a childhood, who had siblings who cared about him, who loved them, that had parents who were loving and caring and basically look at these people that you're going to be hurting by voting for the death penalty."  Resp.'s Exh. 21-VI at 292.

With regard to the evidence of Petitioner's military background, the postconviction court found:

> Further, Mr. Harllee testified that the decision to not put Peterka's military background into the case was a tactical decision based on the fact that the Defendant had committed illegal acts while in the military which led to his general discharge under honorable conditions.  In addition, one penalty phase witness had already testified that the Defendant has been in the National Guard; therefore, Mr. Harllee made a decision not to present any further military record evidence since the State could destroy the positive impact of the fact that the Defendant had served in the National Guard by presenting evidence of the acts that brought about his discharge from the military.

Resp.'s Exh. 17 at 17-18.

With regard to model inmate evidence, Mr. Harllee testified that he has his doubts about how model inmate testimony is received by a jury and has never personally used this type of evidence.  Resp.'s Exh. 21-VII at 426-27.  Mr. Loveless testified at the evidentiary hearing that he had no recollection of his decision not to present this evidence in this case.  He knew, however, that it was a non-statutory mitigator and that he would have considered using.  Resp.'s Exh. 21-VI at 321-22.  With regard to model inmate evidence, the postconviction court specifically found "the testimony of Mr. Harllee and Mr. Loveless to be credible and that they would have presented evidence beneficial to the Defendant if it had in fact existed."  Resp.'s Exh. 17 at 19.

Regarding the failure of penalty phase counsel to present Petitioner's nonparticipation in the escape attempt, the postconviction court found that this incident occurred after the jury penalty phase and that his counsel had no knowledge

of the incident:

> However, Mr. Peterka testified that the incident occurred after the jury penalty phase; thus, this evidence would not have had any impact on the jury's penalty recommendation. Furthermore, the Defendant testified that he did not tell his attorneys about the escape attempt and his decision not to participate in the escape; thus, the Defendant is responsible for failing to provide his attorneys with this information.

Id.

The record supports the state courts' findings that Petitioner's penalty phase counsel conducted a reasonable investigation into his background. Mr. Harllee and/or his investigator questioned Petitioner and Petitioner's family regarding his background and decided on a strategy of presenting Petitioner as a good person who was loved by his family. During the penalty phase of the trial, Mr. Harllee presented testimony from Ruben Purvis, Petitioner's former employer; Petitioner's mother; his former girlfriend, Cindy Rush; a family friend, Connie LeCompte; and Petitioner himself who made a short statement that he would give up his life if he could bring Russell back to life and that he felt he had something to offer to society. See Resp.'s Exh. 1-X at 1870-1905.

With respect to evidence of Petitioner's military background, the state court specifically found that counsel knew of Petitioner's military background and made a strategic decision not to present this evidence to the jury. Strategic decisions of the nature are "virtually unchallengeable." See Strickland, 466 U.S. at 690. The record also supports the conclusion that Petitioner's counsel knew that good behavior while an inmate can be presented in mitigation. While his counsel no longer remembered why such evidence was not presented, the postconviction court specifically found counsel's testimony to be credible on this issue. The supreme court found that no prejudice had been established with regard to the failure to present this evidence. Petitioner has not convinced this court that had model inmate evidence been presented, there is a reasonable probability that "the result of the proceeding would

have been different."  See Strickland, 466 U.S. at 694.[10]  Thus, the state court's conclusion that Petitioner has not established the prejudice prong of Strickland is not an unreasonable application of prevailing precedent.

Finally, there is no evidence that Petitioner's counsel knew of his nonparticipation in the escape of his cellmates.  Penalty phase counsel had no duty to present evidence which he knew nothing about and which was primarily only information possessed by Petitioner himself which he chose not to relate.  ("[T]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  Johnson v. Singletary, 162 F.3d 630, 642 (11th Cir. 1998)).

With regard to the additional mitigation evidence presented at the evidentiary hearing and outlined in the instant petition, Petitioner acknowledges that "some evidence in support of them was presented at the sentencing hearing." Doc. 1, Mem. at 35.  The supreme court also found that the jury was presented with all of this evidence in an effective manner.   A review of the record supports this determination.

In conclusion, this is not a case in which extensive mitigation existed, which had it been presented may have changed to outcome of the proceeding.  See, e.g., Williams

---

[10]With regard to this claim, the postconviction court found as follows:

As to the allegation that Defendant's trial counsel was ineffective for failing to present evidence during the penalty phase that Mr. Peterka was a model inmate, both attorneys for the Defendant testified that if there had been any evidence of good jail conduct that they would have presented it.  The Defendant called Lt. Allen Atkins to testify as to his conduct as an inmate.  Lt. Atkins had to testify from memory since the jail records regarding Peterka's incarceration had been destroyed pursuant to standard jail procedure. Lt. Atkins could not specifically recall Peterka's conduct, but described him from memory as being "a little better" than other inmates who were charged with murder or were considered violent.  However, Lt. Atkins could not recall any specific behavior or incident that would make the Defendant any different than any other inmate "trying to act properly." The Rebuttal Closing Argument of the Defendant argues that "despite the passage of time . . . Lt. Atkins remembered Dan Peterka."  Indeed, Lt. Atkins did remember a first degree murder inmate; however, his memory of the Defendant is vague and to imply that his testimony provides evidence of mitigation that existed at the time of the trial penalty phase is speculative.

Resp.'s Exh. 17 at 18-19.

v. Taylor, supra; Wiggins v. Smith, supra. See also Rutherford v. Crosby, 385 F.3d 1300 (11th Cir. 2004).  There is no deficient performance where a reasonable investigation was conducted and available mitigation evidence was presented.  Petitioner has not demonstrated that no competent counsel would have taken his counsel's approach. Moreover, Petitioner has cited no Supreme Court case which was decided on materially indistinguishable facts which reached a different conclusion

Because Petitioner has failed to meet the deficient performance prong of Strickland, this Court need not address his argument that he was prejudiced by the failure of his penalty phase counsel to present  additional mitigation evidence because this evidence would have outnumbered and substantially outweighed the aggravating circumstances presented.[11]  The state court's factual findings are supported by the record and must be given deference by this Court.  Petitioner has the burden under 28 U.S.C. § 2254(e)(1) to rebut the state court's factual determinations as to this issue with clear and convincing evidence.   Petitioner has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent.  Given these considerations, this Court cannot conclude that the Florida Supreme Court unreasonably applied, or reached a decision contrary to, clearly established federal law.  Therefore, Petitioner is not entitled to habeas relief on this ground.

C.    Ground Three:    Ineffective Assistance of Appellate Counsel

Petitioner's death sentence was erroneously affirmed on direct appeal as a result of his appellate counsel's ineffective assistance of counsel in mispleading two claims for relief in violation of the Due Process Clauses of the U. S. and Florida Constitutions.

Petitioner contends that his appellate attorney rendered ineffective assistance

---

[11]In Petitioner's direct appeal, the Florida Supreme Court held that the trial court erred in considering the pecuniary gain circumstance and in "doubling" the avoiding lawful arrest and hindering law enforcement circumstance.  However, the court held these errors to be harmless in light of the three remaining valid aggravating circumstances and found that the trial court would have imposed the same sentence under the facts of the case.   Peterka, 640 So.2d at 71-72.  Petitioner has not demonstrated that this determination is unreasonable.

of counsel by mispleading two claims for relief in his direct appeal to the Florida Supreme Court.  First, Petitioner argues that the trial court admitted irrelevant and unfairly prejudicial hearsay when one of the arresting officers testified that he had discovered that Petitioner was a fugitive from the State of Nebraska and was considered "armed and dangerous."  Second, Petitioner argues that the trial court admitted irrelevant and unfairly prejudicial hearsay from two witnesses who testified that the deceased had told them that he was afraid of the gun which Petitioner kept in the house they shared.

      1.    *State Proceedings*

The admissibility of this hearsay evidence was raised in Petitioner's direct appeal of his conviction and sentence.  The Florida Supreme Court denied relief on these claims.   See Peterka, 640 So. 2d at 68-69.  Petitioner then raised in his state habeas corpus petition the issue of the ineffectiveness of his appellate counsel in arguing the admissibility of this evidence in the direct appeal.  The court held as follows:

> In his last two claims of ineffective assistance of appellate counsel, Peterka asserts that appellate counsel was ineffective for failing to adequately present his claims that the trial court erred in admitting hearsay evidence that Peterka was considered "armed and dangerous" and that Russell was afraid of Peterka's gun.  Peterka admits that these issues were raised on direct appeal but asks the Court to reconsider them.  In Rutherford v. Moore, 774 So. 2d 637, 645 (Fla. 2000), we held that "if an issue was actually raised on direct appeal, the Court will not consider a claim that appellate counsel was ineffective for failing to raise additional arguments in support of the claim on appeal."  Accordingly, we decline to address these issues.

Peterka, 890 So. 2d at 245-46.  The Florida Supreme Court did not adjudicate these ineffective assistance of appellate counsel claims on the merits because it found them to be procedurally barred.  Respondent, however, has not asserted a procedural default defense, and this Court declines to do so *sua sponte*.  Because Petitioner's ineffective assistance of appellate counsel claim was not "adjudicated on the merits" as defined in § 2244(d), the undersigned will review the claim *de novo*.   See Romine v. Head, 253

F.3d 1349, 1365 (11th Cir. 2001).

2.  *Clearly Established Supreme Court Precedent*

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that enunciated in <u>Strickland</u>.  <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed.2d 746 (2000).  The Supreme Court has held that counsel need not raise every nonfrivolous claim on appeal.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed.2d 987 (1983).  The Court in <u>Jones</u> emphasized the importance of winnowing out weaker arguments in favor of stronger ones.  The Court stated:

> 'Most cases present only one, two, or three significant questions . . . . Usually, . . . if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention.  The effect of adding weaker arguments will be to dilute the force of the stronger ones.' (Citing R. Stern, Appellate Practice in the United States 266 (1981)).

<u>Id</u>. at 752.  The Court has also stated that while it is possible to bring a <u>Strickland</u> claim based on appellate counsel's failure to raise a particular claim in a merits brief, it will be difficult to demonstrate incompetence.  <u>See</u> <u>Robbins</u>, 528 U.S. at 288.  "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'"  <u>Id.</u> (cite omitted).  To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal.  <u>See</u> <u>id</u>. at 285.

3.  *Federal Review of State Court Decision*

a.  <u>Admissibility of "Armed and Dangerous" Evidence</u>

With regard to the admissibility of "armed and dangerous" testimony, the supreme court held on direct appeal as follows:

> The record in the instant case shows that Deputy Harkins testified that a teletype from Nebraska revealed that Peterka was an escaped fugitive and was considered "armed and dangerous."  Defense counsel objected to the testimony as hearsay and irrelevant.  The trial court overruled the objection because it found that the testimony was offered to explain the

officer's actions in subsequently arresting Peterka.  Defense counsel then moved for a mistrial because the testimony was highly prejudicial.  The trial court denied the motion.  The record supports the trial court's rulings that the testimony was not hearsay because it was not offered to prove the truth of the matter asserted and that the testimony was relevant.  Moreover, the record shows that the trial court gave the jury a limiting instruction that the teletype testimony was being admitted not to prove the truth of the matter asserted, but to explain the actions of law enforcement officers.  This limiting instruction eliminated any prejudice that may have resulted from the officer's testimony.

Peterka, 640 So. 2d at 68.

Petitioner argues that his appellate counsel failed to "clearly and cogently articulate" the inadmissibility of this hearsay evidence on direct appeal.  See doc. 1, Mem. at 43.  Respondents contend that Petitioner is making the same argument in his federal petition that his appellate counsel made in the direct appeal.  See doc. 19 at 52-54.  Reviewing the issue *de novo*, the questions before this Court are whether appellate counsel's argument was objectively unreasonable and, if so, whether there is a reasonable probability the result of the proceeding would have been different had counsel argued more cogently.

In his initial brief on direct appeal, Petitioner's appellate attorney made the following arguments:

1.   "Repeatedly letting Harkins tell the jury that Nebraska considered Peterka armed and dangerous had no relevance other than to show his bad character."  Initial Brief of Appellant, Resp.'s Exh. 3 at 35-36.

2.   "Thus, why [the police] used a ruse to arrest him or asked his permission to search the house had no tendency to prove any fact of consequence in this case, and the evidence Nebraska considered him 'armed and dangerous' was of no consequence here and was immaterial to resolving the issues presented by this case."  Id. at 36.

3.   "The evidence, moreover, was harmful, not only because the state managed to get Harkins to say three times that Nebraska considered him a dangerous person but also because it tended to

negate Peterka's defense that he had shot Russell without any intent to kill him.  That is, the jury may very well have considered the evidence as proof of his dangerous propensities." Id. at 38.

In his instant federal petition, Petitioner makes the following arguments:

1.    "[W]hen [this hearsay] is considered in the context of the prosecution theory and Mr. Peterka's defense, [the court cannot be satisfied that it] did not affect the triers-of-fact, that it did not contribute to the conviction and sentence; there is at least a reasonable possibility the jury unfairly considered Mr. Peterka's being 'armed and dangerous' not only as proof of his bad character and propensity for violence (does 'armed and dangerous' mean anything else?), but also as substantive evidence Mr. Peterka shot the deceased with a premeditated intent."  Doc. 1, Mem. at 42.

2.    "Although the armed and dangerous hearsay was admitted to prove the motive of the officers in using a ruse to arrest Mr. Peterka, rather than prove Mr. Peterka was a dangerous person, the officers' state of mind was not a material issue:  why they tricked Mr. Peterka at the time of the arrest–some thirty-two hours after the shooting–had no logical connection whatsoever to the issue in dispute, i.e., to whether or not Mr. Peterka shot John Russell with a premeditated intent."  Id. at 41-42.

A review of the two briefs demonstrates that Petitioner and his state appellate counsel are making almost identical arguments.   Petitioner has not identified any additional arguments nor cited any critical case which was overlooked by his counsel on direct appeal.  In addition, both his state reply brief and his federal brief cite State v. Baird, 572 So. 2d 904 (Fla. 1990), in support of his argument.  See Resp.'s Exh. 6 at 12-14 & Doc. 1, Mem. at 41.  Petitioner has thus failed to demonstrate that his appellate counsel's performance was constitutionally deficient, particularly since his appellate counsel did, in fact, raise the issue in the merits brief.

Finally, Petitioner contends that his appellate counsel "failed to point out on a motion for rehearing that the trial court did not give the jury the limiting instruction on the armed and dangerous testimony the Florida Supreme Court (mis-)concluded 'eliminated any prejudice that may have resulted from [its admission].'" Doc. 1, Mem.

at 43 (quoting <u>Peterka</u>, 640 So. 2d at 68).  While Petitioner's appellate counsel may not have raised the issue of the limiting instruction in the motion for rehearing, this issue was raised in the initial brief on direct appeal[12] and was therefore put before the court for its consideration in ruling on this issue.

Petitioner has failed to establish deficient performance under the <u>Strickland</u> standard, and he has not shown that there is a reasonable probability that he would have prevailed on direct appeal had his appellate counsel articulated this claim more "clearly and cogently."  Furthermore, Petitioner has not cited a Supreme Court case holding that appellate counsel was ineffective where counsel did, in fact, raise the issue on appeal.  Therefore, this claim is denied.

b.     <u>Admissibility of testimony that victim was afraid of Petitioner's gun</u>

At trial, the court overruled trial counsel's hearsay objection finding that the testimony that Russell was afraid of Petitioner's gun was admissible to "show what the state of mind of [the deceased] might have been on . . . the date. . . he was killed," thus rebutting Petitioner's claim that the shooting occurred in self-defense or was accidental.   Resp.'s Exh. 1-VIII at 1434.  With regard to the admissibility of this evidence, the supreme court held on direct appeal as follows:

> [Three witnesses] testified that the victim did not intend to confront Peterka about the stolen money order because he was afraid of Peterka's gun and that the victim would let the police handle the matter after the bank received the original money order.  In addition, Trently testified that the victim had a reputation for peacefulness in the community.  Before each witness's testimony, the trial court gave the jury a limiting instruction that the witness's testimony was only offered to prove the victim's state of mind. . . .
>
> The victim's state of mind was a material issue in this case where Peterka asserted that he accidentally shot the victim during a fight instigated by the victim.  Thus, the trial court properly admitted the testimony to rebut Peterka's defense that the killing was accidental and to show that the

---

[12]"The court said it would give a limiting instruction to the jury regarding how it could consider this evidence, but it never did (T 1356-57).  Defense counsel objected to any such instruction as ineffective, and he moved for a mistrial, which the court denied (T 1357)."  Resp.'s Exh. 3 at 38 n. 7.

victim feared the gun in the house.

**Peterka**, 640 So. 2d at 69.[13]

In both the initial brief on direct appeal and in the instant federal petition, it is argued that the killing was unintentional. Petitioner's initial brief on direct appeal states that "Peterka's claim of accident is really that during the struggle he unintentionally killed the victim." Resp.'s Exh. 3 at 42. His federal habeas petition states "Mr. Peterka's defense claim was–and is– that _he_ unintentionally shot the deceased." Doc. 1, Mem. at 45. In the initial brief on direct appeal, Petitioner's appellate counsel argued as follows:

> 1.   The principle [sic] danger in admitting evidence of the victim's state of mind is "that the jury will consider the victim's statement of fear as somehow reflecting on the <u>defendant's</u> state of mind rather than the victim's – i.e., as a true indication of the defendant's intentions, actions, or culpability." (citing <u>United States v. Brown</u>, 490 F.2d 758, 766 (D.C. Cir. 1974)). Resp.'s Exh. 3 at 40.

> 2.   Clearly from this argument, the prosecutor used <u>Russell's</u> state of mind to infer that Peterka killed Russell in cold blood, but as the court in <u>Brown</u> and this court in <u>Correll [v. State</u>, 523 So. 2d 562 (Fla. 1988)] recognized, that is an impermissible reason to admit evidence of Russell's state of mind." <u>Id</u>. at 41.

In Petitioner's federal habeas petition he states that "there is at least a reasonable possibility the jury unfairly considered the deceased's fear of Mr. Peterka's gun to be a reflection of Mr. Peterka's state of mind, i.e., to be a true indication Mr. Peterka shot the deceased with a premeditated intent, especially since the prosecutor endorsed

---

[13]The court also recited the following hearsay exception:

A homicide victim's statements may be material and admissible under the state of mind exception when: (1) the defendant claims self-defense and the victim's statements that he feared the defendant tend to rebut the claim; (2) the defendant claims the victim committed suicide and the defense can be rebutted by showing the victim's statements are inconsistent with suicide; and (3) the defendant claims the death was accidental and the defense can be rebutted by the victim's statements that he feared the instrument of death. Kingery v. State, 523 So. 2d 1199, 1202 (Fla. 1st Dist. Ct. App. 1988); Ehrhardt, § 803.3a.

exactly this misuse of the deceased's state of mind in his closing argument."  Doc. 1, Mem. at 47.  In addition, in both his state and federal briefs Petitioner cites three of the same cases in support of his argument.  See United States v. Brown, supra, Kingery v. State, 523 So. 2d 1199 (Fla. 1st Dist. Ct. App. 1988) and Hunt v. State, 429 So. 2d 811 (Fla. 2d Dist. Ct. App. 1983).

Petitioner has not demonstrated that his appellate counsel failed to make a sufficient argument on direct appeal or that his performance was constitutionally deficient.  Appellate counsel made essentially the same arguments before the Florida Supreme Court that Petitioner advances now.  Petitioner has not identified any additional arguments which his appellate counsel failed to make nor cited any critical case which was not previously cited.  Furthermore, Petitioner has not cited a Supreme Court case holding that appellate counsel was ineffective where counsel did, in fact, raise the issue on appeal.

Finally, Petitioner contends that his appellate counsel failed to point out on a motion for rehearing that the Florida Supreme Court misapprehended the law because the case they relied on and which was cited by appellate counsel in the initial brief, Kingery v. State, "fatally misquoted" U.S. v. Brown.  Doc. 1, Mem. at 47.  A reading of both cases demonstrates that there was no "misapprehension" of Florida law by the supreme court and thus no deficient performance of appellate counsel with regard to a motion for rehearing.[14]

---

[14]The two relevant exceptions to the general rule of inadmissibility of hearsay statements of fear of the defendant were cited in U.S. v. Brown, 490 F.2d 758, 767 (D.C. Cir. 1973), as follows:

The most common of these involves defendant's claim of self-defense as justification for the killing.  When such a defense is asserted, a defendant's assertion that the deceased first attacked him may be rebutted by the extrajudicial declarations of the victim that he feared the defendant, thus rendering it unlikely that the deceased was in fact the aggressor in the first instance . . . .

A third situation involves a claim of accidental death, where, for example, defendant's version of the facts is that the victim picked up defendant's gun and was accidentally killed while toying with it.  In such cases, the deceased's statements of fear as to guns or of defendant himself (showing he would never go near defendant under any circumstances) are relevant in that they tend to rebut this defense.  Of course, even in

Petitioner has failed to establish deficient conduct under the <u>Strickland</u> standard. Therefore, Petitioner is not entitled to habeas relief on this ground.

**D.     Ground Four:        Ineffective Assistance of Appellate Counsel**

<u>Petitioner's death sentence was erroneously affirmed on direct appeal as a result of his appellate counsel's ineffective assistance of counsel in failing to assert a claim for relief in violation of the Sixth Amendment and Due Process Clause of the U. S. Constitution.</u>

Petitioner asserts that his appellate counsel's failure to raise as error the admission of testimony regarding the victim's reputation for peacefulness and non-violence amounted to ineffective assistance of appellate counsel. Petitioner contends that "there is at least a reasonable possibility the jury unfairly considered Russell's reputation for peacefulness and non-violence as substantive evidence not only that he would not have confronted Mr. Peterka about the stolen money order as Mr. Peterka claims, but also, and stronger, that Mr. Peterka must therefore have shot him with a premeditated intent, especially since the prosecutor endorsed exactly this use of it in his closing argument."  Doc. 1, Mem. at 52.

**1.     *State Proceedings***

Petitioner raised this claim in his state habeas corpus petition.  The supreme

---

these cases, where the evidence is of a highly prejudicial nature, it has been held that it must be excluded in spite of a significant degree of relevance.

The First District Court of Appeals in <u>Kingery v. State</u>, 523 So. 2d 1199, 1202 (Fla. App. 1st Dist. Ct. App. 1988) (citing <u>U.S. v. Brown</u>, 490 F.2d 758, 767 (D.C. Cir. 1973)) elaborated as follows:

Indeed, a homicide victim's purported statements to a third party have been deemed admissible in only three general categories in which the need for the statements appears to overcome the possible prejudice.  These categories are: (1) the defendant claims self-defense, which can be rebutted by the victim's statements that he feared the defendant; (2) the defendant claims the victim committed suicide, which can be rebutted by statements of the victim that are inconsistent with suicide, and (3) the defendant claims the victim's death was accidental, which can be rebutted by the victim's statements that he feared whatever the instrument of death proved to be.  However, if the evidence is highly prejudicial, it will be excluded even if it has a high degree of relevance.

Additionally, <u>U.S. v. Brown</u> was cited in <u>Kennedy v. State</u>, 385 So. 2d 1020, 1021 (Fla. 1st Dist. Ct. App. 1980) as illustrative of a good discussion of the state of mind exceptions to the hearsay rule.  The case was not binding on the supreme court.

Case No.  3:05cv00022/SPM

court found that the trial court erred in allowing this evidence to be presented to the jury; however, the court also found this error to be harmless.  <u>Peterka</u>, 890 So. 2d at 244.  The court held that because the State introduced this evidence prior to its introduction of Petitioner's taped statement in which he claims that the victim initiated the confrontation, the State could not use the rebuttal evidence to contradict evidence that it later offered.  <u>See</u> <u>Stoll v. State</u>, 762 So. 2d 870, 875 (Fla. 2000)("State may not introduce rebuttal evidence to explain or contradict evidence that the State itself offered.")  The court also found that Peterka's appellate counsel should have been aware of this argument at the time the direct appeal was filed even though <u>Stoll</u> had not yet been decided.  However, the court did not decide whether appellate counsel's performance was deficient because it found that there was no prejudice.  The court held that, "[b]ecause the admissible evidence that Russell stated he was not going to confront Peterka is much stronger evidence that Russell did not initiate the altercation with Peterka than the evidence of Russell's reputation for peacefulness, the erroneous admission of Russell's reputation for peacefulness was harmless."  <u>Peterka</u>, 890 So. 2d at 245.

    2.    <u>***Clearly Established Supreme Court Law***</u>

The <u>Strickland</u> standard for determining the ineffective assistance of appellate counsel is set forth *supra*.

    3.    <u>***Federal Review of Claim***</u>

Initially, this Court defers to the state court's factual findings as Petitioner has not shown by clear and convincing evidence that those findings are unreasonable.  <u>See</u> 28 U.S.C. § 2254(d)(2)-(e)(1); <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.'  § 2254(d)(2).  Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.").  Next, this Court

must decide whether the state court's denial of Petitioner's claim is contrary to or an unreasonable application of clearly established Supreme Court law.

The Florida Supreme Court cited Strickland as the legal standard for analyzing claims of ineffective assistance of appellate counsel and applied those standards to the facts of Petitioner's claims.  Therefore, the court applied the correct legal rule based on Supreme Court precedent.  The remaining issue is thus whether the state court's denial of Petitioner's claim resulted in an unreasonable application of Strickland.

While the court found that Petitioner's appellate counsel had erred, it did not reach a determination as to deficient performance because it found that there was no prejudice.  When addressing the prejudice prong of Strickland, the court found that the admissible evidence that Russell was not going to confront Peterka was much stronger evidence that Russell did not initiate the altercation than the evidence as to his reputation for peacefulness and non-violence.   Thus, the court found that the admission of this evidence alone was not enough to effect the outcome of the case. The court found the error harmless.

Even if Petitioner succeeds in making a showing that his counsel unreasonably failed to raise a particular claim, he then has the burden of demonstrating a reasonable probability that, but for his counsel's unreasonable failure to raise the claim, he would have prevailed on his appeal.  Robbins, 528 U.S. at 287-89 (citing Strickland, 466 U.S. at 694).  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Id. at 288 (citing Jones v. Barnes).

In the instant case, Petitioner has not adequately demonstrated that had his appellate counsel raised this issue on direct appeal that the outcome of the appeal would have been different.  There is no reason to assume that the supreme court would have found this error more harmful on direct appeal than it did when evaluating Petitioner's state habeas claim.  Given the fact that the testimony regarding Russell's

fear of Petitioner's gun was admissible (see discussion as to Ground 3, part 3b *supra*), the jury had already heard that Russell was hesitant to confront Petitioner about the money order.  This Court finds, as did the Florida Supreme Court, that this evidence is stronger than evidence of Russell's general reputation for peacefulness and non-violence.  While it may have had some cumulative effect with regard to the issue of whether or not Russell instigated the fight, it is not likely that this evidence alone determined the jury's verdict as to premeditation in this case.  Moreover, Petitioner has not adequately demonstrated that this issue was stronger than the others that were raised in his direct appeal.[15] See Robbins, 528 U.S. at 288.

Therefore, Petitioner has failed to demonstrate that the state court's rejection of this claim relied on erroneous facts, or applied law contrary to established Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent.  Therefore, Petitioner is not entitled to habeas relief on this ground.

**E.	Ground Five:	Ineffective Assistance of Collateral Counsel**

Petitioner is entitled  to an evidentiary hearing based on his postconviction counsel's ineffective assistance of counsel in failing to develop allegations during the state court evidentiary hearing.

Petitioner's fifth claim is essentially a claim that his postconviction counsel was ineffective in adequately drafting his initial and amended 3.851 motions (i.e., failing to assert all of the claims for relief) and in failing to develop the factual allegations which had been raised  during the evidentiary hearing conducted on this amended motion.

**1.	*State Court Proceedings***

In the appeal of his denial of postconviction relief, Petitioner raised a claim that he was denied due process because his postconviction counsel failed to present sufficient evidence to support the claims that were raised in the 3.851 motion and failed to raise other meritorious claims.  The supreme court held that:

To the extent that Peterka asserts a claim of ineffective assistance of

---

[15]Petitioner's appellate counsel raised twelve other issues on direct appeal.  See Peterka, 890 So.2d at 226 n.3.

postconviction counsel, we have held that this is not a valid basis for relief.  See King v. State, 808 So.2d 1237, 1245 (Fla. 2002)(stating that the claim that initial postconviction counsel was ineffective did not state a valid basis for relief).  We further conclude that Peterka has not established in this case that the alleged errors of prior postconviction counsel rise to the level of a constitutional due process violation. Accordingly, we deny this claim for relief.

Peterka, 890 So.2d at 241.

2.  *Clearly Established Supreme Court Law*

There is no constitutional right to counsel in postconviction proceedings, and thus any alleged incompetence of postconviction counsel is not a ground for relief in federal habeas proceedings.  28 U.S.C. § 2254 (i)(2006) states as follows:  "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief arising under section 2254." See  Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987); Murray v. Giarratano, 492 U.S. 1, 10, 109 S. Ct. 2765, 2770, 106 L. Ed. 2d 1 (1989).

3.  Federal Review of Claim

With regard to the availability of an evidentiary hearing in federal court, Title 28 U.S.C. § 2254 (e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Stated affirmatively, "'a habeas petitioner is entitled to an evidentiary hearing if he or

she alleges facts that, if proved at the hearing, would entitle petitioner to relief.'" **Breedlove v. Moore**, 279 F.3d 952, 960 (11th Cir. 2002) (quoting **Meeks v. Singletary,** 963 F.2d 316, 319 (11th Cir. 1992)).

Petitioner is not entitled to an evidentiary hearing on this claim because he has not raised a claim that is cognizable in federal habeas law, much less that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."   28 U.S.C. § 2254 (e)(2)(B).

As to Petitioner's claim of actual innocence to support his request for an evidentiary hearing raised in his reply and in supplemental authority, Petitioner's claim does not fall within **Schlup v. Delo**, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995).  In **Schlup,** the Supreme Court held that a habeas petitioner asserting actual innocence as a gateway to procedurally defaulted claims must establish that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.  The petitioner thus is required to make a stronger showing than that needed to establish prejudice [citing **Strickland**]."  **Id.**  The Florida Supreme Court did not find that Petitioner's claim of ineffective assistance of postconviction counsel was procedurally barred.  It found that Petitioner had not raised a valid claim for relief. Therefore, Petitioner cannot avail himself of a gateway claim of actual innocence pursuant to **Schlup** or **House v. Bell**, ___ U.S. ___,126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006), because he has not raised a legally recognized claim which is procedurally barred from being heard.  **See** **Davis v. Terry**, 465 F.3d 1249, 1253 (11th Cir. 2006)("the procedural claim of actual innocence under **Schlup** is permitted in order to assure consideration of constitutional claims of an unfair trial *where those claims have been procedurally defaulted.*" (emphasis added)).  Furthermore, as Respondent points out, Petitioner disputes the legal theory upon which he was convicted; he does not assert a claim of actual factual innocence.  Therefore, Petitioner's request for an evidentiary hearing is denied, as is this claim for relief.

## F.    Ground Six:        Cumulative Error

**The cumulative errors involved in Petitioner's trial rendered it fundamentally unfair in violation of the Fourteenth Amendment to the U.S. Constitution.**

**Petitioner's claim in its entirety is that he is "entitled to habeas relief because the sheer number and types of error involved in his trial, when considered as a whole, rendered it fundamentally unfair," and he incorporates "all of the facts and arguments presented elsewhere in the memorandum."  Doc. 1, Mem. at 79-80.  Respondent argues that this claim is insufficiently pled and procedurally barred because Petitioner did not raise a cumulative error claim in either his postconviction appeal or in his state habeas petition.**

### 1.    *Clearly Established Supreme Court Precedent*

**It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[16] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed.2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed.2d 1 (1999); Picard, 404 U.S. at 277-78.**

---

[16]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. Id. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed.2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement

in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[17] The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." <u>Duncan</u>, 513 U.S. at 365-66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  The <u>Baldwin</u> Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  <u>Id</u>.  With regard to this statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302-03 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"<u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp.2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas

---

[17]The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" (Cite omitted).[18]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. O'Sullivan, 526 U.S. at 839-40, 848. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. See Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed.2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); accord Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), rev'd on other grounds, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed.2d 812 (1991).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed.2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist,

---

[18]In  his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

Id.

### 2. *Federal Review of Claim*

Because Petitioner is barred by state procedural rules from exhausting the substance of his claims, procedural default exists for purposes of federal habeas review. See Coleman v. Thompson, supra. Additionally, Petitioner has made none of the requisite showing to excuse his default. Furthermore, Petitioner is now precluded under state law from re-arguing the issue on appeal. As discussed *supra*, an issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. See O'Sullivan, 526 U.S. at 839-40, 848.

Overlooking the procedural bar on this new claim, the claim is without merit. As previously discussed with regard to Grounds One through Four, none of the alleged errors of trial or appellate counsel, considered alone, satisfy the threshold standard of

ineffective assistance of counsel.  Taken together and examining both trial counsel and appellate counsel's performance, the cumulative effect of the alleged errors falls far short of depriving Petitioner of effective assistance of counsel or of rendering Petitioner's trial fundamentally unfair.  Therefore, Petitioner is not entitled to relief on his claim of cumulative error.  See Bronstein v. Wainwright, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)).

Furthermore, Petitioner cites no Supreme Court case on point in support of this claim and to date the Eleventh Circuit Court of Appeals has not recognized an independent claim based on the premise that the cumulative errors in a state court trial render the trial fundamentally unfair.  See Cargill v. Turpin, 120 F.3d 1366, 1386-87 (11th Cir. 1997), wherein the court declined to entertain a cumulative error claim as discussed in Derden v. McNeel, 978 F.2d 1453, 1456-61 (5th Cir. 1992) and Walker v. Engle, 703 F.2d 959, 963-69 (6th Cir. 1983).[19]

Therefore, Petitioner is not entitled to relief on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the petition for issuance of a writ of habeas corpus (doc. 1) is DENIED.

DONE and ORDERED this 29th day of March, 2007.

_s/ Stephan P. Mickle_

**Stephan P. Mickle**
**United States District Judge**

---

[19]The Fifth Circuit in Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992), cert. denied, 508 U.S. 960, 113 S. Ct. 2928, 124 L. Ed. 2d 679 (1993), recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" (cite omitted).  The court also held that meritless claims or claims which are not prejudicial cannot be cumulated, regardless of the total number raised.  Id. at 1461.